**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Leonard O'Dell,                     )     No. CV 11-2261-PHX-RCB (MHB)
                                    )
        Plaintiff,                  )              **ORDER**
                                    )
vs.                                 )
                                    )
Detention Officer Abbott, et al.,   )
                                    )
        Defendants.                 )
_____ )

        Plaintiff Leonard O'Dell, who is confined in the Fourth Avenue Jail, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983, which the Court dismissed with leave to amend. Plaintiff has filed a First Amended Complaint. (Doc. 30.) Plaintiff has also filed a motion for status of case, a notice, and a letter to the Court. (Doc. 31, 32, 33.) Plaintiff's motion for status will be granted to the extent discussed herein. The Court will take no action on Plaintiff's notice or letter; to seek relief from the Court, Plaintiff must file a motion specifying the relief sought and that is legibly written. Plaintiff's First Amended Complaint will be dismissed with leave to amend.

**I.    Statutory Screening of Prisoner Complaints**

        The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may

1   be granted, or that seek monetary relief from a defendant who is immune from such relief.

2   28 U.S.C. § 1915A(b)(1), (2).

3        A pleading must contain a "short and plain statement of the claim *showing* that the

4   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not

5   demand detailed factual allegations, "it demands more than an unadorned, the-defendant-

6   unlawfully-harmed-me accusation."   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

7   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

8   statements, do not suffice." Id.

9        "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

10   claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly,

11   550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content

12   that allows the court to draw the reasonable inference that the defendant is liable for the

13   misconduct alleged." Id. "Determining whether a complaint states a plausible claim for

14   relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

15   experience and common sense." Id. at 1950.  Thus, although a plaintiff's specific factual

16   allegations may be consistent with a constitutional claim, a court must assess whether there

17   are other "more likely explanations" for a defendant's conduct. Id. at 1951.

18        But as the United States Court of Appeals for the Ninth Circuit has instructed, courts

19   must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th

20   Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards

21   than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89,

22   94 (2007) (*per curiam*)).

23        If the Court determines that a pleading could be cured by the allegation of other facts,

24   a *pro se* litigant is entitled to an opportunity to amend a complaint before dismissal of the

25   action. See Lopez v. Smith, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (*en banc*). The Court

26   should not, however, advise the litigant how to cure the defects.  This type of advice "would

27   undermine district judges' role as impartial decisionmakers." Pliler v. Ford, 542 U.S. 225,

28   231 (2004); see also Lopez, 203 F.3d at 1131 n.13 (declining to decide whether the court was

required to inform a litigant of deficiencies).  The Court will dismiss Plaintiff's First Amended Complaint for failure to state a claim, but because it may possibly be saved by amendment, the Court will dismiss the First Amended Complaint with leave to amend.

**II.     First Amended Complaint**

Plaintiff alleges seven counts for conditions of confinement, denial of constitutionally adequate medical care, unconstitutional disciplinary proceedings, denial of access to the courts, denial of property, search and seizure, and retaliation.  Plaintiff sues the following current or former employees of the Maricopa County Sheriff's Office (MCSO): Detention Officers Abbott, Delatorre, Kanar, Papp, Richardson, Baker, Dunn, Looning, McCuller; and Sergeants Rose, Curtis, and Hayes.  Plaintiff seeks compensatory relief.

**Background**

Plaintiff is charged in three criminal cases in the Superior Court in Maricopa County, case# CR2011-146392, CR2011-101449, and CR2011-007699.[1]  The charges in all three cases appear to stem from incidents while Plaintiff was incarcerated in jail or prison in connection with an earlier case, CR2010-048132.[2]

**III.     Failure to State a Claim Under 42 U.S.C. § 1983**

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right.  <u>Wood v.</u>

---

[1] <u>See</u> http://www.courtminutes.maricopa.gov/docs/Criminal/012012/m5045615.pdf (last visited February 6, 2012).

[2] On January 12, 2011, Plaintiff was sentenced to 3.5 years in prison for aggravated assault.  <u>See</u> http://www.courtminutes.maricopa.gov/docs/Criminal/012011/m4555472.pdf (last visited February 6, 2012).  In the three pending cases, Plaintiff is charged with promotion of prison contraband, aggravated assault, and destruction or injury to jail property. <u>See</u> http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR2011-007699;http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR2011-101449; http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR2011-146392; http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR2010-048132 (last visited February 6, 2012).

1   Ostrander, 879 F.2d 583, 587 (9th Cir. 1989).  In addition, to state a valid constitutional

2   claim, a plaintiff must allege that he suffered a specific injury as a result of the conduct of

3   a particular defendant and he must allege an affirmative link between the injury and the

4   conduct of that defendant.  Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

**A.     Conditions of Confinement**

6   Plaintiff designates Count I as a claim for threat to safety, but he generally alleges the

7   denial of recreation, a delay in access to a toilet, and verbal abuse.  Accordingly, the Court

8   construes Count I as a claim for unconstitutional conditions of confinement rather than as a

9   threat to safety claim.

10   A pretrial detainee's claim for unconstitutional conditions of confinement arises under

11   the Fourteenth Amendment Due Process Clause, while a convicted inmate's claim arises

12   under the Eighth Amendment prohibition against cruel and unusual punishment.  Bell v.

13   Wolfish, 441 U.S. 520, 535 and n.16 (1979).  Nevertheless, the same standards are applied.

14   See Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  To state a constitutional claim for

15   unconstitutional conditions of confinement, an inmate must allege facts to support that he

16   was incarcerated under conditions posing a substantial risk of harm and that jail officials

17   were "deliberately indifferent" to those risks.  Farmer v. Brennan, 511 U.S. 825, 832-33

18   (1994); Redman v. County of Los Angeles, 942 F.2d 1435, 1443 (9th Cir. 1991) (en banc).

19   Thus, a plaintiff must allege facts supporting that he is incarcerated under conditions posing

20   a substantial risk of harm.  Farmer, 511 U.S. at 834.  Only deprivations denying the minimal

21   civilized measure of life's necessities are sufficiently grave to violate the Eighth Amendment.

22   Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).  These are "deprivations of essential

23   food, medical care, or sanitation" or "other conditions intolerable for prison confinement."

24   Rhodes v. Chapman, 452 U.S. 337, 348 (1981).  Whether a condition of confinement rises

25   to the level of a constitutional violation may depend, in part, on the duration of an inmate's

26   exposure to that condition.  Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996) (citing Hutto

27   v. Finney, 437 U.S. 678, 686-87 (1978)).  "The more basic the need, the shorter the time it

28   can be withheld."  Hoptowit v. Ray, 682 F.2d 1287, 1259 (9th Cir. 1982).

1    A plaintiff must also allege facts to support that a defendant had a "sufficiently
2    culpable state of mind," i.e., that the official acted with deliberate indifference to inmate
3    health or safety. See Farmer, 511 U.S. at 837. In defining "deliberate indifference" in the
4    confinement context, the Supreme Court has imposed a subjective test: "the official must
5    both be aware of the facts from which the inference could be drawn that a substantial risk of
6    serious harm exists, *and* he must also draw the inference." Id. A plaintiff must also allege
7    how he was injured by the alleged unconstitutional conditions. See, e.g., Lewis v. Casey,
8    518 U.S. 343, 349 (1996) (doctrine of standing requires that claimant have suffered or will
9    imminently suffer actual harm).

10    Plaintiff alleges in part that he has been verbally harassed. However, "[v]erbal
11    harassment or abuse . . . is not sufficient to state a constitutional deprivation[.]'" Oltarzewski
12    v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (quoting Collins v. Cundy, 603 F.2d 825, 827
13    (10th Cir. 1979)); Machin v. Costas, No. Civ. 09-444, 2009 WL 3839325, at *15 (S.D. Cal.
14    Nov. 16, 2009). Plaintiff also complains of a one-time fifteen minute delay in access to a
15    toilet. The one-time delay in access to a toilet does not rise to the level of an unconstitutional
16    condition of confinement.

17    Plaintiff otherwise alleges that he was denied recreation on several dates. The long-
18    term denial of outdoor recreation and exercise can rise to the level of a constitutional
19    violation. See Keenan, 83 F.3d at 1089-90. Plaintiff alleges that he was denied recreation
20    on various dates, but his allegations are ambiguous regarding the extent to which he was
21    denied recreation. Moreover, Plaintiff fails to allege facts to support that one or more
22    Defendants were responsible for the denial of recreation for a protracted period. Rather,
23    Plaintiff indicates that two Defendants sporadically denied him recreation and he does not
24    allege that he was denied recreation for a prolonged period. Plaintiff fails to either allege
25    facts to support that any Defendant enacted or enforced a policy, custom, or practice that
26    resulted in the denial of Plaintiff's constitutional right to recreation or facts to support that
27    any Defendant directly denied his right to recreation on anything more than an occasional
28    basis. He also fails to allege facts to support that any Defendant denied him recreation for

JDDL-K

1    a protracted period despite knowledge of a serious risk to Plaintiff, i.e., with deliberate

2    indifference.  For all of these reasons, Plaintiff fails to state a claim for unconstitutional

3    conditions of confinement in Count I and that count will be dismissed.

4              **B.    Medical Care**

5        Plaintiff designates Count II as a claim for denial of due process based on the denial

6    of medical care.  Not every claim by a prisoner relating to inadequate medical treatment

7    states a violation of the Eighth or Fourteenth Amendment.  To state a § 1983 medical claim,

8    a plaintiff must show that the defendants acted with "deliberate indifference to serious

9    medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v.

10   Gamble, 429 U.S. 97, 104 (1976)).   A plaintiff must show (1) a "serious medical need" by

11   demonstrating that failure to treat the condition could result in further significant injury or

12   the unnecessary and wanton infliction of pain and (2) the defendant's response was

13   deliberately indifferent. Jett, 439 F.3d at 1096 (quotations omitted).

14       "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051,

15   1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know

16   of and disregard an excessive risk to inmate health; "the official must both be aware of facts

17   from which the inference could be drawn that a substantial risk of serious harm exists, and

18   he must also draw the inference." Farmer, 511 U.S. at 837.  Deliberate indifference in the

19   medical context may be shown by a purposeful act or failure to respond to a prisoner's pain

20   or possible medical need and harm caused by the indifference.  Jett, 439 F.3d at 1096.

21   Deliberate indifference may also be shown when a prison official intentionally denies,

22   delays, or interferes with medical treatment or by the way prison doctors respond to the

23   prisoner's medical needs. Estelle, 429 U.S. at 104-05; Jett, 439 F.3d at 1096.

24       Deliberate indifference is a higher standard than negligence or lack of ordinary due

25   care for the prisoner's safety. Farmer, 511 U.S. at 835.  "Neither negligence nor gross

26   negligence will constitute deliberate indifference." Clement v. California Dep't of

27   Corrections, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); see also Broughton v. Cutter

28   Labs., 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or

"medical malpractice" do not support a claim under § 1983).  "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs."  <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989).  A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference.  <u>See Shapley v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985).  The indifference must be substantial.  The action must rise to a level of "unnecessary and wanton infliction of pain."  <u>Estelle</u>, 429 U.S. at 105.

Plaintiff alleges that he suffers from asthma and sometimes needs to use an inhaler. He otherwise alleges the following: on June 6, 2011, Plaintiff asked an unnamed person for an inhaler due to dust, but that person denied the request.  On July 19 and August 13, 2011, Plaintiff apparently asked an unnamed person for medical assistance for unstated reasons, which was denied.  On July 24, 2011, Plaintiff pushed the intercom button to summon assistance for unspecified reasons, but only heard music playing; he did not receive assistance for three hours and was in "bad condition."  (Doc. 30 at 4.)  In late August 2011, Defendant Papp turned off the water in Plaintiff's cell for an unspecified period.  Although unclear, Plaintiff apparently had requested his inhaler, but did not receive it.

In September 2011, Plaintiff asked for his inhaler, which was in the Special Management Unit (SMU) staff office.  An unnamed officer told Plaintiff that the floor officer would be notified.  The floor officer was apparently Defendant Kanar, with whom Plaintiff has previously had confrontations.  Kanar asked Plaintiff if he wanted his inhaler – Plaintiff told him "yes, but not by you."  (<u>Id.</u>)  Kanar "walked out of the cell day room area and refused" Plaintiff's request, although Kanar knew that Plaintiff suffered from asthma. Plaintiff had difficulties breathing that night.  (<u>Id.</u> at 8.)  He received his inhaler the next morning, but still required additional medical assistance of some kind.  About six to eight weeks later, a night shift medications nurse asked Plaintiff if he wanted "court meds".  (<u>Id.</u>)  Plaintiff responded that he could wait until "tomorrow," but the next day his rescue inhaler

1    was discontinued.  (Id.)  On November 2, 2011, the intercom was turned off in the middle

2    of Plaintiff requesting assistance.[3]

3         Plaintiff indicates that he has asthma and sometimes requires a rescue inhaler to

4    breathe.  As such, he sufficiently alleges a serious medical need.  However, Plaintiff fails to

5    set forth facts to support that any named Defendant acted with deliberate indifference to his

6    serious medical needs.  Although he alleges that Kanar did not bring him his inhaler, he also

7    acknowledges that he told Kanar that he did not want Kanar to bring the inhaler.  Further,

8    while Plaintiff alleges breathing difficulties that night, he does not allege that he ever

9    reported those difficulties to Kanar or anyone else or otherwise again sought access to his

10   inhaler. Plaintiff's remaining allegations also are not sufficient to support that any Defendant

11   acted with deliberate indifference to his serious medical needs.  Accordingly, Count II will

12   be dismissed for failure to state a claim.

13        **C.    Disciplinary Proceedings**

14        In Count III, Plaintiff appears to be attempting to challenge disciplinary proceedings

15   at the jail.  A *pretrial detainee* has a substantive due process right against restrictions that

16   amount to punishment for a criminal offense.  Valdez v. Rosenbaum, 302 F.3d 1039, 1045

17   (9th Cir. 2002) (citing United States v. Salerno, 481 U.S. 739, 746 (1987); Bell v. Wolfish,

18   441 U.S. 520, 535 (1979); Redman, 942 F.2d at 1440-41.  This right is violated if restrictions

19   are "imposed for the purpose of punishment."  Bell, 441 U.S. at 535.  But jail officials are

20   entitled to impose restrictions to effect confinement, and detention necessarily affects a

21   detainee's ability to live as comfortably as he might like; a *de minimis* level of imposition is

22

23

24

_____

25        [3] Plaintiff also alleges that at some point, he asked Officer Perez if someone, who was
26   chaining inmates for transport to court, had hit the wall outside his cell with the chains.
     Defendant Papp opened Plaintiff's cell door and yelled at Plaintiff that "I told you no one is
27   throwing chains at your door" and told Plaintiff to shut up.  (Id. at 9.)  Plaintiff complains
     that verbal harassment has continued.  As noted above, verbal abuse or harassment does not
28   rise to the level of a constitutional violation.

permissible.[4]  Id. at 539 n.21.  Thus, no unconstitutional punishment occurs when the

government imposes restrictions as part of legitimate operational concerns to ensure security

and order.  Id. at 540.  However, imposition of punishment for violation of rules does require

the procedural protections described by the Supreme Court in Wolff v. McDonnell, 418 U.S.

539, 565-66 (1974).  Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir. 1996).  These safeguards

are:  (1) written notice of the charges at least twenty-four hours prior to the hearing; (2) a

written statement by the fact-finder as to the evidence relied on and reasons for the

disciplinary action; and (3) a limited right to call witnesses and present documentary

evidence when it would not be unduly hazardous to institutional safety or correctional goals

to allow the inmate to do so.  Wolff, 418 U.S. at 565-66.  Thus, to assert a claim for denial

of due process in connection with disciplinary proceedings, a plaintiff must allege the

circumstances surrounding the disciplinary charge, the safeguard(s) he was allegedly denied,

and the punishment imposed.

In Count III, Plaintiff alleges that he has received more than 200 days of disciplinary

time – although unclear, he appears to assert that Jail staff have repeatedly provoked him.

He also generally alleges that he has been denied the right to be heard at disciplinary hearings

without alleging when, the charges, or how he was denied due process.

---

[4]  Thus:

Not every disability imposed during pretrial detention amounts to
"punishment" in the constitutional sense, however.  Once the Government has
exercised its conceded authority to detain a person pending trial, it obviously
is entitled to employ devices that are calculated to effectuate this detention.
Traditionally, this has meant confinement in a facility which, no matter how
modern or how antiquated, results in restricting the movement of a detainee in
a manner in which he would not be restricted if he simply were free to walk
the streets pending trial.  Whether it be called a jail, a prison, or a custodial
center, the purpose of the facility is to detain.  Loss of freedom of choice and
privacy are inherent incidents of confinement in such a facility.  And the fact
that such detention interferes with the detainee's understandable desire to live
as comfortably as possible and with as little restraint as possible during
confinement does not convert the conditions or restrictions of detention into
"punishment."

Bell, 441 U.S. at 537.

JDDL-K

1    Plaintiff's allegations are vague and conclusory. Although *pro se* pleadings are
2    liberally construed, <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972), conclusory and vague
3    allegations will not support a cause of action. <u>Ivey v. Board of Regents of the University of</u>
4    <u>Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).  Further, a liberal interpretation of a civil rights
5    complaint may not supply essential elements of the claim that were not initially pled.  <u>Id.</u>
6    Because Plaintiff fails to allege specific facts to support that he has been denied due process
7    in connection with disciplinary proceedings, including when, where, how, and by whom, he
8    fails to state a claim in Count III.

9         **D.    Telephone Access**

10        Plaintiff characterizes Count IV as a claim for denial of access to the courts.
11   However, his claim is more properly characterized as denial or restrictions on
12   communications.

13        An inmate retains First Amendment free speech rights not inconsistent with his status
14   as a prisoner and with the legitimate penological objectives of the corrections system.  <u>See</u>
15   <u>Shaw v. Murphy</u>, 532 U.S. 223, 231 (2001); <u>Clement v. California Dep't of Corr.</u>, 364 F.3d
16   1148, 1151 (9th Cir. 2004).  However, jail personnel may regulate speech if such restriction
17   is reasonably related to legitimate penological interests and an inmate is not deprived of all
18   means of expression.  <u>Valdez</u>, 302 F.3d at 1048 (citing <u>Turner v. Safley</u>, 482 U.S. 78, 92
19   (1986)).  The United States Constitution does not provide for an unfettered right to use a
20   telephone.  Rather, to state a constitutional claim, a plaintiff must allege that the use of a
21   phone is connected to another constitutional right, such as the right of free speech or access
22   to the courts.  Even then, a telephone is only one means for an inmate to exercise the
23   extremely limited First Amendment right to communicate with persons outside the jail.
24   <u>Valdez</u>, 302 F.3d at 1048.  That same right may be met through other means such as
25   correspondence or personal visits.

26        Plaintiff alleges the following: On October 8, 2011, he was housed in the maximum
27   security or SMU of the Fourth Avenue Jail.  Plaintiff submitted a request for a legal call 24-
28   hours in advance.  Apparently Defendant Abbott overheard a discussion Plaintiff was having

1   with Sergeant Rose and challenged Plaintiff about his statement.  In turn, Plaintiff accused

2   Abbott of violating confidentiality.  Plaintiff's legal call was denied without explanation.

3   Plaintiff further alleges that he has been denied phone access due to disciplinary sanctions

4   and he generally alleges that Defendant Abbott has been uncooperative regarding legal calls,

5   that Defendant Delatorre called him a name, and that he was sanctioned for rapping in the

6   day room.

7          For the reasons discussed elsewhere, Plaintiff fails to state a claim against Delatorre

8   based on verbal abuse or harassment.  While Plaintiff implies that Abbott has been

9   uncooperative concerning legal and other telephone access, Plaintiff does not allege facts to

10  support that he otherwise lacked the means to contact his attorney or others such as

11  correspondence or visitation.  That is, he does not allege facts to support that his attorney was

12  unable to contact him by other means or that his attorney attempted but was denied the ability

13  to visit Plaintiff.  Plaintiff also does not allege facts to support that he was unable to contact

14  his attorney or others by alternative means.   Accordingly, Plaintiff fails to state a

15  constitutional claim in Count IV for limitations on his communication rights.

16         **E.    Search and Seizure**

17         Plaintiff characterizes Count V as a claim concerning property and violation of his

18  Fourth Amendment rights against unreasonable searches and seizures.  Plaintiff alleges the

19  following: on September 7, 2010, Plaintiff returned from court to find his cell had been

20  "demolished." (Doc. 30 at 15.) Missing from his cell were two honey buns purchased at the

21  commissary and magazines.  On May 17, 2011, Plaintiff returned to his cell from court to

22  again find items taken, including pants, books, and "other things."  (Id.)  Plaintiff asked

23  Walker, Lopez, and Barton what had happened and stated that he was supposed to be present

24  when his cell was searched due to legal and medical papers in his cell.  Plaintiff alleges that

25  his cell was the only one searched and that he lost other items he had purchased and was not

26  compensated.

27         To the extent that Plaintiff asserts a claim for violation of his Fourth Amendment

28  rights, Count V will be dismissed for failure to state a claim.  The Fourth Amendment

JDDL-K                                                    - 11 -

1    guarantees the right of the people to be secure against unreasonable searches, and its

2    protections are not extinguished upon incarceration.  Michenfelder v. Sumner, 860 F.2d 328,

3    322-33 (9th Cir. 1988).  However, the Fourth Amendment "proscription against unreasonable

4    searches does not apply within the confines of the jail cell.  The recognition of privacy rights

5    for prisoners in their individual cells simply cannot be reconciled with the concept of

6    incarceration and needs and objectives of penal institutions."  Hudson v. Palmer, 468 U.S.

7    517, 525-26 (l984).

8        Plaintiff otherwise appears to assert that he was deprived of property without due

9    process.  In Parratt v. Taylor, 451 U.S. 527, 541 (1981), the Supreme Court held that due

10   process is not violated when a state employee negligently deprives an individual of property,

11   as long as the state makes available a meaningful post-deprivation remedy.  The rationale

12   underlying Parratt is that *pre*-deprivation procedures are impractical when the deprivation

13   of property occurs through negligent conduct of a state employee because a state cannot

14   know when such deprivations will occur.  Hudson v. Palmer, 468 U.S. 517, 533 (1984).

15   However, "[w]here a government official's act causing injury to life, liberty, or property is

16   merely negligent, 'no procedure for compensation is *constitutionally* required.'"  Daniels v.

17   Williams, 474 U.S. 327, 333 (1986) (emphasis added) (quoting Parratt, 451 U.S. at 548).

18       The logic of Parratt has been extended to intentional *un*authorized deprivations of

19   property by state actors because a state also cannot know when such deprivations will occur.

20   Hudson, 468 U.S. at 533.  As with negligent deprivations, where a state makes available a

21   meaningful *post*-deprivation remedy, such as a common-law tort suit against a prison

22   employee for intentional unauthorized deprivations, a federal due process claim is precluded.

23   Hudson, 468 U.S. at 534-35; King v. Massarweh, 782 F.2d 825, 826 (9th Cir. 1986).

24       *If* Plaintiff is attempting to allege an intentional *un*authorized deprivation of property

25   by jail staff, he fails to state a constitutional claim because he indicates that there is an

26   available remedy for loss of property.  The fact that his efforts at obtaining reimbursement

27   were unsuccessful, does not, absent more, establish that a remedy was unavailable.

28

1   *If*, on the other hand, Plaintiff is attempting to allege a deprivation of property by jail

2   staff pursuant to jail regulations or policies, he *may* be able to state a Due Process violation.

3   To state a federal constitutional claim, Plaintiff must allege facts to support that a deprivation

4   was (a) authorized by jail policies or regulations, (b) by a Defendant, and (c) absent

5   pre-deprivation procedures.  Plaintiff fails to connect the deprivation of property to any

6   Defendant.  Plaintiff fails to allege facts to support that any Defendant took his property or

7   that his property was taken pursuant to a Jail policy or regulation.  Thus, he fails to allege

8   facts to support that he was denied pre-deprivation procedures to which he was entitled prior

9   to the deprivation of property pursuant to a jail policy or rule.  For the reasons discussed,

10  Plaintiff fails to state a claim for deprivation of property in violation of due process.

11          **F.      Excessive Force**

12          Plaintiff designates Count VI as a claim for excessive use of force based on the

13  following facts: on April 2, 2011, Plaintiff was assaulted by an unidentified person.  On July

14  19, 2011, Plaintiff was involved in incident in which someone was injured – apparently

15  Defendant Kanar.   Ever since the latter incident, Plaintiff has been treated with

16  "indifference" including with respect to the processing of his grievances.  Plaintiff states that

17  on one occasion, Defendant Dunn came into the day room area and assaulted Plaintiff "25

18  times w/ a pepperball gun" and Plaintiff was shot with a taser multiple times.  Plaintiff fails

19  to allege when, where, and other supporting circumstances regarding Dunn's use of force.

20          The Fourth Amendment applies to excessive force claims by pretrial detainees.  See

21  Lolli v. County of Orange, 351 F.3d 410, 415 (9th Cir. 2003).  Officials acting under color

22  of state law may not maliciously and sadistically use force for the purpose of causing harm.

23  Hudson v. McMillian, 503 U.S. 1, 7 (1992); Watts v. McKinney, 394 F.3d 710, 711 (9th Cir.

24  2005).  To state a claim for excessive force, a plaintiff must allege facts to support that an

25  official used or caused to be used objectively unreasonable force against him.  See Brosseau

26  v. Haugen, 543 U.S. 194, 197 (2004).  Analysis of an excessive force claim requires

27  "balancing the 'nature and quality of the intrusion' on a person's liberty with the

28  'countervailing governmental interest at stake' to determine whether the use of force was

1  objectively reasonable under the circumstances." <u>Drummond v. City of Anaheim</u>, 343 F.3d

2  1052, 1056 (9th Cir. 2003) (citations omitted); <u>see also</u> <u>Graham v. Connor</u>, 490 U.S. 386, 395

3  (1989).

4        Plaintiff fails to adequately describe the facts surrounding the incidents mentioned.

5  He fails to clearly identify the Defendants involved, when and where the events occurred,

6  and other supporting facts.  Moreover, he fails to allege facts to support that the force used

7  was objectively unreasonable under the circumstances.  Instead, Plaintiff's allegations are

8  vague and confusing.  For that reason, Count VI will be dismissed for failure to state a claim.

9        **G.    Retaliation**

10        In Count VII, Plaintiff appears to assert a claim for retaliation based on the following

11  allegations: since July 2011, Plaintiff has attempted to avoid "problems" at the Jail.  (Doc.

12  30 at 19.)  However, although Kevin McCuller was an alleged victim of an assault by

13  Plaintiff, McCuller continues to work on Plaintiff's side of the run, which is frustrating and

14  upsetting to Plaintiff.  Plaintiff generally alleges that various Defendants have attempted to

15  provoke, mislead, or implicate him in disciplinary infractions.

16        To state a constitutional claim for retaliation, a plaintiff must allege that a defendant

17  acting under color of state law took adverse action against him because he engaged in

18  constitutionally-protected conduct, the adverse action was not narrowly tailored to advance

19  legitimate goals, and the adverse action chilled the plaintiff's exercise of his First

20  Amendment rights or caused him to suffer more than minimal harm.  <u>Rhodes v. Robinson</u>,

21  408 F.3d 559, 567-58 (9th Cir. 2005); <u>see also Hines v. Gomez</u>, 108 F.3d 265, 267 (9th Cir.

22  1997) (retaliation claims requires an inmate must show (1) that the prison official acted in

23  retaliation for the exercise of a constitutionally-protected right, and (2) that the action

24  "advanced no legitimate penological interest").

25        Plaintiff did not have a constitutionally-protected right to assault a detention officer.

26  Plaintiff otherwise fails to allege that he engaged in constitutionally-protected conduct, and

27  specifically what that conduct was, or specific facts to support when, where, and how any

28

1  Defendant retaliated against Plaintiff for engaging in the constitutionally-protected conduct.

2  Accordingly, Plaintiff fails to state a claim for retaliation.

**V.    Leave to Amend**

For the foregoing reasons, Plaintiff's First Amended Complaint will be dismissed for failure to state a claim upon which relief may be granted.  Within 30 days, Plaintiff may submit a second amended complaint to cure the deficiencies outlined above.  The Clerk of Court will mail Plaintiff a court-approved form to use for filing a second amended complaint.  If Plaintiff fails to use the court-approved form, the Court may strike the amended complaint and dismiss this action without further notice to Plaintiff.

Plaintiff must clearly designate on the face of the document that it is the "Second Amended Complaint."  The second amended complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part any prior complaint by reference.  Plaintiff may include only one claim per count.

A second amended complaint supersedes every prior complaint.  Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992); Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1546 (9th Cir. 1990).  After amendment, the Court will treat every prior complaint as nonexistent.  Ferdik, 963 F.2d at 1262.  Any cause of action that was raised in a prior complaint is waived if it is not raised in a second amended complaint.  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

**VI.   Warnings**

**A.    Release**

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release.  Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot.  Failure to comply may result in dismissal of this action.

**B.    Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other

1    relief with a notice of change of address.  Failure to comply may result in dismissal of this

2    action.

3            **C.    Copies**

4            Plaintiff must submit an additional copy of every filing for use by the Court.  <u>See</u>

5    LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice

6    to Plaintiff.

7            **D.    Possible "Strike"**

8            Because the Complaint and First Amended Complaint have been dismissed for failure

9    to state a claim, if Plaintiff fails to file an amended complaint correcting the deficiencies

10   identified in this Order, the dismissal may count as a "strike" under the "3-strikes" provision

11   of 28 U.S.C. § 1915(g).  Under the 3-strikes provision, a prisoner may not bring a civil action

12   or appeal a civil judgment *in forma pauperis* under 28 U.S.C. § 1915 "if the prisoner has, on

13   3 or more prior occasions, while incarcerated or detained in any facility, brought an action

14   or appeal in a court of the United States that was dismissed on the grounds that it is frivolous,

15   malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is

16   under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).

17           **E.    Possible Dismissal**

18           If Plaintiff fails to timely comply with every provision of this Order, including these

19   warnings, the Court may dismiss this action without further notice.  <u>See</u> <u>Ferdik</u>, 963 F.2d at

20   1260-61 (a district court may dismiss an action for failure to comply with any order of the

21   Court).

22   **IT IS ORDERED:**

23           (1)    The First Amended Complaint is **dismissed** for failure to state a claim.  (Doc.

24   30.)  Plaintiff has **30 days** from the date this Order is filed to file a second amended

25   complaint in compliance with this Order on this Court's approved form complaint.

26           (2)    If Plaintiff fails to file an amended complaint within 30 days, the Clerk of

27   Court must, without further notice, enter a judgment of dismissal of this action with prejudice

28   that states that the dismissal may count as a "strike" under 28 U.S.C. § 1915(g).

1         (3)     The Clerk of Court must mail Plaintiff a court-approved form for filing a civil

2  rights complaint by a prisoner.

3         (4)     Plaintiff's motion for status is **granted** to the extent set forth herein.  (Doc. 31.)

4        DATED this 24th day of April, 2012.

_____
Robert C. Broomfield
Senior United States District Judge

**JDDL-K**