**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leonard O'Dell, | No. CV 11-2261-PHX-RCB (MHB) |
| Plaintiff, | **ORDER** |
| vs. | |
| Detention Officer Abbott, et al., | |
| Defendants. | |

Plaintiff Leonard O'Dell, who is confined in the Fourth Avenue Jail, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983, which the Court dismissed with leave to amend. Plaintiff filed a First Amended Complaint, which the Court also dismissed for failure to state a claim with leave to amend. (Doc. 30, 35.) Plaintiff has filed a Second Amended Complaint.[1] (Doc. 38.) The Court will dismiss Plaintiff's Second Amended Complaint and this action.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against

---

[1] Plaintiff also filed two motions for relief. (Doc. 40, 41.) In the motions, Plaintiff appears to seek to supplement his Second Amended Complaint. Rule 15(d) of the Federal Rules of Civil Procedure provides in relevant part that, "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Rather than seeking to supplement his Second Amended Complaint concerning intervening events, Plaintiff seeks to repeat claims already made. His motions for relief will therefore be denied.

a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)).

**II.   Second Amended Complaint**

Plaintiff alleges six counts concerning conditions of confinement, denial of constitutionally adequate medical care, unconstitutional disciplinary proceedings, excessive

- 2 -

force, deprivation of property, and search and seizure.  Plaintiff sues the following current or former employees of the Maricopa County Sheriff's Office (MCSO): Detention Officers Abbott, Delatorre, Kanar, Papp, Richardson, Baker, Dunn, Looning, McCuller; Sergeants Rose, Curtis, and Hayes; and medical staff-member, Yolanda.  Plaintiff seeks compensatory relief.

**Background**

Plaintiff is charged in three criminal cases in Maricopa County Superior Court, case# CR2011-146392, CR2011-101449, and CR2011-007699.[2]  The charges in all three cases appear to stem from incidents while Plaintiff was incarcerated in connection with an earlier case, CR2010-048132.[3]

**III.    Failure to State a Claim Under 42 U.S.C. § 1983**

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right.  Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989).  In addition, to state a valid constitutional claim, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant.  Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

**A.    Conditions of Confinement**

---

[2] See http://www.courtminutes.maricopa.gov/docs/Criminal/012012/m5045615.pdf (last visited February 6, 2012).

[3] On January 12, 2011, Plaintiff was sentenced to 3.5 years in prison for aggravated assault.  See http://www.courtminutes.maricopa.gov/docs/Criminal/012011/m4555472.pdf (last visited February 6, 2012).  In the three pending cases, Plaintiff is charged with promotion of prison contraband, aggravated assault, and destruction or injury to jail property. See http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR2011-007699;http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR2011-101449; http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR2011-146392; http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR2010-048132 (last visited February 6, 2012).

Plaintiff designates Count I as a claim for unconstitutional conditions of confinement. A pretrial detainee's claim for unconstitutional conditions of confinement arises under the Fourteenth Amendment Due Process Clause, while a convicted inmate's claim arises under the Eighth Amendment prohibition against cruel and unusual punishment. Bell v. Wolfish, 441 U.S. 520, 535 and n.16 (1979). Nevertheless, the same standards are applied. See Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). To state a constitutional claim for unconstitutional conditions of confinement, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that jail officials were "deliberately indifferent" to those risks. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Redman v. County of Los Angeles, 942 F.2d 1435, 1443 (9th Cir. 1991) (*en banc*). Thus, a plaintiff must allege facts supporting that he is incarcerated under conditions posing a substantial risk of harm. Farmer, 511 U.S. at 834. Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to violate the Eighth Amendment. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). These are "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." Rhodes v. Chapman, 452 U.S. 337, 348 (1981). Whether a condition of confinement rises to the level of a constitutional violation may depend, in part, on the duration of an inmate's exposure to that condition. Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996) (citing Hutto v. Finney, 437 U.S. 678, 686-87 (1978)). "The more basic the need, the shorter the time it can be withheld." Hoptowit v. Ray, 682 F.2d 1287, 1259 (9th Cir. 1982).

A plaintiff must also allege facts to support that a defendant had a "sufficiently culpable state of mind," i.e., that the official acted with deliberate indifference to inmate health or safety. See Farmer, 511 U.S. at 837. In defining "deliberate indifference" in the confinement context, the Supreme Court has imposed a subjective test: "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." Id. A plaintiff must also allege how he was injured by the alleged unconstitutional conditions. See, e.g., Lewis v. Casey, 518 U.S. 343, 349 (1996) (doctrine of standing requires that claimant have suffered or will

- 4 -

1  imminently suffer actual harm).

2  Plaintiff alleges in part that he has been verbally harassed. However, "[v]erbal
3  harassment or abuse . . . is not sufficient to state a constitutional deprivation[.]'" <u>Oltarzewski</u>
4  <u>v. Ruggiero</u>, 830 F.2d 136, 139 (9th Cir. 1987) (quoting <u>Collins v. Cundy</u>, 603 F.2d 825, 827
5  (10th Cir. 1979)); <u>Machin v. Costas</u>, No. Civ. 09-444, 2009 WL 3839325, at *15 (S.D. Cal.
6  Nov. 16, 2009). Plaintiff also complains of a one-time fifteen minute delay in access to a
7  toilet. A one-time delay in access to a toilet does not rise to the level of an unconstitutional
8  condition of confinement. These portions of Count I will be dismissed.

9  Plaintiff also alleges that he was denied recreation. The long-term denial of outdoor
10 recreation and exercise can rise to the level of a constitutional violation. <u>See</u> <u>Keenan</u>, 83
11 F.3d at 1089-90. Plaintiff alleges that he was not offered recreation on October 29, 30, 31,
12 and November 1, and 3, 2011, "and dates in between." (Doc. 38 at 6.) He also alleges that
13 he spent 30 days in a cell without recreation. Plaintiff otherwise alleges that Officer Starks
14 refused recreation on two days, Richardson refused recreation on one day, and Abbott and
15 Delatorre either denied recreation or otherwise somehow caused Plaintiff problems.
16 However, Plaintiff fails to allege facts to support that any Defendant denied him recreation
17 for a prolonged period. He also fails to allege facts to support that any Defendant enacted
18 or enforced a policy, custom, or practice that resulted in the denial of Plaintiff's
19 constitutional right to recreation or facts to support that any Defendant directly denied his
20 right to recreation on anything more than an occasional basis and despite knowledge that
21 such denial posed an excessive risk to Plaintiff. For these reasons, Plaintiff fails to state a
22 claim for unconstitutional conditions of confinement in Count I and it will be dismissed.

23 **B.    Medical Care**

24 Plaintiff designates Count II as a claim for denial of constitutionally adequate medical
25 care. Not every claim by a prisoner relating to inadequate medical treatment states a
26 violation of the Eighth or Fourteenth Amendment. To state a § 1983 medical claim, a
27 plaintiff must show that the defendants acted with "deliberate indifference to serious medical
28 needs." <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429

1  U.S. 97, 104 (1976)).  A plaintiff must show (1) a "serious medical need" by demonstrating
2  that failure to treat the condition could result in further significant injury or the unnecessary
3  and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.
4  Jett, 439 F.3d at 1096 (quotations omitted).

5  "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051,
6  1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know
7  of and disregard an excessive risk to inmate health; "the official must both be aware of facts
8  from which the inference could be drawn that a substantial risk of serious harm exists, and
9  he must also draw the inference." Farmer, 511 U.S. at 837.  Deliberate indifference in the
10 medical context may be shown by a purposeful act or failure to respond to a prisoner's pain
11 or possible medical need and harm caused by the indifference. Jett, 439 F.3d at 1096.
12 Deliberate indifference may also be shown when a prison official intentionally denies,
13 delays, or interferes with medical treatment or by the way prison doctors respond to the
14 prisoner's medical needs. Estelle, 429 U.S. at 104-05; Jett, 439 F.3d at 1096.

15 Deliberate indifference is a higher standard than negligence or lack of ordinary due
16 care for the prisoner's safety. Farmer, 511 U.S. at 835.  "Neither negligence nor gross
17 negligence will constitute deliberate indifference." Clement v. California Dep't of
18 Corrections, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); see also Broughton v. Cutter
19 Labs., 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or
20 "medical malpractice" do not support a claim under § 1983).  "A difference of opinion does
21 not amount to deliberate indifference to [a plaintiff's] serious medical needs." Sanchez v.
22 Vild, 891 F.2d 240, 242 (9th Cir. 1989).  A mere delay in medical care, without more, is
23 insufficient to state a claim against prison officials for deliberate indifference. See Shapley
24 v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  The indifference
25 must be substantial.  The action must rise to a level of "unnecessary and wanton infliction
26 of pain." Estelle, 429 U.S. at 105.

27 Plaintiff alleges that he suffers from asthma and sometimes needs to use an inhaler.
28 He further alleges the following: on June 6, 2011, he asked an unidentified person for an

- 6 -

inhaler, but did not receive it. On July 19, 2011, an unidentified person refused to bring his inhaler or summon medical assistance when Plaintiff was in "bad shape." (Doc. 38 at 9.) On July 24, 2011, Plaintiff asked an unidentified person for his inhaler, three hours later, Officer Coles brought it. On August 15, 2011, an unidentified person refused to bring Plaintiff's inhaler or summon medical assistance. On November 2, 2011, Plaintiff was requesting assistance over the intercom when music began playing and then the intercom was turned off. On September 18, 2011, Plaintiff pushed the intercom to request his inhaler but was told by an unidentified person to wait while that person notified the floor officer. Officer Kanar came with Plaintiff's inhaler, but did not hand the inhaler to his partner so as to avoid a confrontation with Plaintiff. Plaintiff asked Kanar to give his inhaler to another officer, but Kanar did not. Kanar left without summoning a nurse or doctor to "look over [Plaintiff's] pain." (Id. at 10.) Plaintiff alleges that he was having difficulty breathing.

Apparently on March 9 and 10, 2012, Plaintiff's cell and window were covered with bedding material. Kanar and Nurse Yolanda passed Plaintiff's cell without distributing Plaintiff's medications to him and ignored his yells. On another occasion, Plaintiff requested his inhaler from Officer Rosario, while Rogers and Papp were present. According to Plaintiff, Papp refused to move so that Plaintiff could receive his inhaler and Plaintiff waited until the next day to receive the inhaler, while in "severe shape." (Id. at 11.) Papp also turned off water on occasion when there was no flooding or other harm and Plaintiff was unable to shower to breathe.

Plaintiff indicates that he has asthma and sometimes requires an inhaler. Assuming that Plaintiff's asthma rises to the level of a serious medical need, Plaintiff fails to describe the severity of his symptoms when he requested his inhaler, or other medical attention, on the relevant dates. Further, Plaintiff generally fails to allege facts to support that named Defendants acted with deliberate indifference to his serious medical needs. Plaintiff complains of delays in receiving his inhaler or other medications, and that Kanar failed to meet him half-way to resolve their differences, but these allegations do not support that Kanar or any other Defendant denied or delayed access to medications despite knowledge

of a serious risk to Plaintiff's health, i.e., that they acted with deliberate indifference to Plaintiff's serious medical needs. Accordingly, Count II will be dismissed for failure to state a claim.

### C. Disciplinary Proceedings

Plaintiff designates Count III as a claim for denial of due process in connection with Jail disciplinary proceedings. A *pretrial detainee* has a substantive due process right against restrictions that amount to punishment for a criminal offense. Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002) (citing United States v. Salerno, 481 U.S. 739, 746 (1987); Bell v. Wolfish, 441 U.S. 520, 535 (1979); Redman, 942 F.2d at 1440-41. This right is violated if restrictions are "imposed for the purpose of punishment." Bell, 441 U.S. at 535. But jail officials are entitled to impose restrictions to effect confinement, and detention necessarily affects a detainee's ability to live as comfortably as he might like; a *de minimis* level of imposition is permissible.[4] Id. at 539 n.21. Thus, no unconstitutional punishment occurs when the government imposes restrictions as part of legitimate operational concerns to ensure security and order. Id. at 540. Nevertheless, imposition of punishment for violation of rules does require the procedural protections described by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 565-66 (1974). Mitchell v. Dupnik, 75 F.3d 517, 524

---

[4] Thus:
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. Traditionally, this has meant confinement in a facility which, no matter how modern or how antiquated, results in restricting the movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets pending trial. Whether it be called a jail, a prison, or a custodial center, the purpose of the facility is to detain. Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment."

Bell, 441 U.S. at 537.

1  (9th Cir. 1996). These safeguards are: (1) written notice of the charges at least twenty-four
2  hours prior to the hearing; (2) a written statement by the fact-finder as to the evidence relied
3  on and reasons for the disciplinary action; and (3) a limited right to call witnesses and present
4  documentary evidence when it would not be unduly hazardous to institutional safety or
5  correctional goals to allow the inmate to do so. Wolff, 418 U.S. at 565-66. Thus, to assert
6  a claim for denial of due process in connection with disciplinary proceedings, a plaintiff must
7  allege the circumstances surrounding the disciplinary charge, the safeguard(s) he was
8  allegedly denied, and the punishment imposed.

9        In Count III, Plaintiff generally alleges that Abbott, Kanar, McCuller, Delatorre, Papp,
10  Baker, Looning, Dunn, and Richardson, and Sergeants Curtis, Rose and Hayes have
11  sanctioned him with more than 200 days for rule infractions. He contends that because he
12  has quarreled with staff in the past, staff now look for reasons to charge him with infractions.
13  Plaintiff claims that Curtis "denied" or "chilled" his free speech rights, without alleging
14  when, where, or how. He also asserts that he has been denied the right to compel witnesses
15  to appear at disciplinary proceedings.

16        Plaintiff fails to allege when and with what disciplinary infractions he was charged
17  or to allege how he was denied due process. Instead, his allegations are vague and
18  conclusory. Although *pro se* pleadings are liberally construed, Haines v. Kerner, 404 U.S.
19  519, 520-21 (1972), conclusory and vague allegations will not support a cause of action.
20  Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). Further,
21  a liberal interpretation of a civil rights complaint may not supply essential elements of the
22  claim that were not initially pled. Id. Because Plaintiff fails to allege facts to support that
23  he was denied due process in connection with any disciplinary proceeding, including when,
24  where, how, and by whom, he fails to state a claim in Count III.

25        **D.**    **Compulsory Process & Attorney Access**

26        Plaintiff characterizes Count IV as a claim for denial of the right to compulsory
27  process and the assistance of counsel. Plaintiff alleges the following: on October 8, 2011,
28  he was housed in the maximum security unit (SMU) at the Fourth Avenue Jail. At some

point, Plaintiff submitted a request for a legal call 24-hours in advance. As Plaintiff was conversing with a sergeant about acts of one of the sergeant's subordinates, Abbott, Plaintiff sought to be fed something other than "the loaf." (Doc. 38 at 13.) The sergeant brought up that something he believed to be urine had been thrown on him. Plaintiff told him that water, rather than urine, had been thrown. Sergeant Rose overheard part of this discussion and walked out to the run and asked "who throws urine on my officers?" Plaintiff contends Rose thereby breached confidentiality. A Security Response Team (SRT) was called and demolished a cell, which Plaintiff speculates was to get back at him for having allegedly assaulted an employee. While on disciplinary confinement, Plaintiff was denied visits and access to the telephone. On November 28, 2011, Plaintiff had a legal visit and then needed to make a legal call. During the legal visit, Abbott walked back and forth "dogging" Plaintiff's attorney. (Id. at 14.) After making his legal call, Plaintiff was "rapping" in his cell when Abbott walked by. (Id.) Abbott asked why Plaintiff was rapping and not making his call. Plaintiff responded that he had just finished his call. Abbott told Plaintiff that it would be the last legal call Plaintiff would ever enjoy. Officer Delatorre then called Plaintiff a "bitch." (Id.) At that point, a supervisor intervened and Plaintiff was locked down. Sergeant Tobler brought Plaintiff his meal tray, but never retrieved it as he had promised. Plaintiff claims that Abbott and Delatorre placed themselves in harm's way.

As discussed elsewhere, verbal abuse or harassment does not, absent more, rise to the level of a constitutional violation. Otherwise, Plaintiff fails to allege facts to state a violation of his constitutional rights. Plaintiff acknowledges that he was allowed to make a legal call. Plaintiff's allegation that Sergeant Rose asked who had thrown urine does not, absent any additional facts, support that Plaintiff's safety was jeopardized. Plaintiff's remaining allegations are vague and conclusory. For these reasons, Plaintiff fails to state a constitutional claim in Count IV.

### E. Search and Seizure

Plaintiff characterizes Count V as a claim for violation of his Fourth Amendment

1  rights[5] and deprivation of property.  Plaintiff alleges the following: on September 7, 2010,
2  he returned from court to find his cell had been "demolished."  (Doc. 38 at 17.)  Missing
3  from his cell were magazines, a medical splint, and two honey buns.  On May 17, 2011,
4  Plaintiff returned to his cell from court to again find his cell had been searched and items
5  were missing.

6  Plaintiff fails to allege the involvement by any named Defendant in the cell searches
7  or deprivation of property.  Thus, he fails to state a claim for relief in Count V and it will be
8  dismissed.

### F.    Excessive Force

10  In Count VI, Plaintiff appears to be attempting to assert a claim for use of excessive
11  force.  The Fourth Amendment applies to excessive force claims by pretrial detainees.  See
12  Lolli v. County of Orange, 351 F.3d 410, 415 (9th Cir. 2003).  Officials acting under color
13  of state law may not maliciously and sadistically use force for the purpose of causing harm.
14  Hudson v. McMillian, 503 U.S. 1, 7 (1992); Watts v. McKinney, 394 F.3d 710, 711 (9th Cir.
15  2005).  To state a claim for excessive force, a plaintiff must allege facts to support that an
16  official used or caused to be used objectively unreasonable force against him.  See Brosseau
17  v. Haugen, 543 U.S. 194, 197 (2004).  Analysis of an excessive force claim requires
18  "balancing the 'nature and quality of the intrusion' on a person's liberty with the
19  'countervailing governmental interest at stake' to determine whether the use of force was
20  objectively reasonable under the circumstances."  Drummond v. City of Anaheim, 343 F.3d
21  1052, 1056 (9th Cir. 2003) (citations omitted); see also Graham v. Connor, 490 U.S. 386, 395
22  (1989).

---

[5] The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches, and its protections are not extinguished upon incarceration. Michenfelder v. Sumner, 860 F.2d 328, 322-33 (9th Cir. 1988).  However, the Fourth Amendment "proscription against unreasonable searches does not apply within the confines of the jail cell.  The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and needs and objectives of penal institutions."  Hudson v. Palmer, 468 U.S. 517, 525-26 (l984).  The searches of Plaintiff's cell, absent more, do not state a constitutional violation.

Plaintiff alleges the following facts: on July 19, 2011, Plaintiff was involved in an incident during which someone was hurt. On September 2, 2011, Plaintiff was assaulted by an unidentified person. Since these events, Plaintiff claims that he has been subject to retaliation. Plaintiff claims that unidentified individuals twice placed themselves in harm's way. He also alleges that he was shot with pepper balls and with a taser by Sergeant Hayes, apparently after Plaintiff refused to comply with orders. Plaintiff also asserts that he asked that Kanar not deal with him so that there would be no further incidents between them. He contends that Sergeant Hayes and Kanar and Dunn should have called SRT to deal with him when he was disruptive, instead of trying to handle the situation themselves.

Plaintiff alleges that he was shot with pepper balls and a taser by Sergeant Hayes. However, the facts alleged by Plaintiff do not support that the amount of force used was unreasonable under the circumstances. Indeed, Plaintiff's allegations, albeit vague, ambiguous, and confusing, reflect that force was used after Plaintiff failed to comply with orders and/or assaulted another employee. Plaintiff's allegations do not support that the use of force was unreasonable under the circumstances. To the extent that Plaintiff complains of retaliation, his allegations are vague and conclusory. For these reasons, Count VI will be dismissed for failure to state a claim.

### G. Grievance Process

In Count VII, Plaintiff complains about grievance procedures and asserts extreme abuse or corruptness of power. He alleges that between July 2011 to March 1, 2012, he has had difficulties obtaining what he considers the proper resolution of his grievances. Plaintiff complains that Sergeant Stock has done nothing to rectify Plaintiff's grievances on Stock's shift. McCuller, who was the victim of an alleged assault, continues to work on Plaintiff's run and incites problems. Plaintiff asked for relief from Dunn and Hayes, without success. Plaintiff asserts that he has been charged for commissary purchases that he did not make and

has not received requested medical attention.[6]

"There is no legitimate claim of entitlement to a jail grievance procedure." Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). But if there is an established grievance procedure, the denial of access to the grievance process may state a constitutional violation. Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), abrogated on other grounds by Shaw v. Murphy, 532 U.S. 223 (2001); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). The "government" to which the First Amendment guarantees a right to petition for redress of grievances includes jail authorities. Hall, 64 F.3d at 1279 (citing Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.1989)).

Plaintiff does not allege facts to support that he was denied access to an available jail grievance procedure. Instead, he complains about the responses to his grievances. That, absent more, does not rise to the level of a constitutional violation. Accordingly, Plaintiff fails to state a claim for violation of his right to petition for redress of grievances.

## IV. Dismissal without Leave to Amend

Because Plaintiff has failed to state a claim in his Second Amended Complaint, the Court will dismiss his Second Amended Complaint. "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." Moore v. Kayport Package Express, Inc., 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355 (9th Cir. 1996). Repeated failure to cure deficiencies is one of the factors to be considered in deciding whether justice requires granting leave to amend. Moore, 885 F.2d at 538.

Plaintiff has made three efforts at crafting a viable complaint and appears unable to do so despite specific instructions from the Court. The Court finds that further opportunities to amend would be futile. Therefore, the Court, in its discretion, will dismiss Plaintiff's Second Amended Complaint without leave to amend.

---

[6] As to these allegations, Plaintiff fails to allege any supporting facts, such as when, where, and by whom.

1   **IT IS ORDERED:**

2       (1)    Plaintiff's Second Amended Complaint is **dismissed** for failure to state a claim. (Doc. 38)

4       (2)    Plaintiff's motions for relief are **denied**.  (Doc. 40, 41.)

5       (3)    The Clerk of Court must enter judgment of dismissal with prejudice.

6       (4)    The Clerk of Court must make an entry on the docket stating that the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

8       (5)    The docket shall reflect that the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), that any appeal of this decision would not be taken in good faith.

DATED this 15th day of July, 2012.

_____
Robert C. Broomfield
Senior United States District Judge